UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN FRANKLIN and JENIFER CHISM, | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 02578 |
| v. | ) ) ) | Judge Edmond E. Chang |
| PARKING REVENUE RECOVERY SERVICES, INC. and BRYON BELLERUD II, PC, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Carmen Franklin and Jenifer Chism brought this suit against Parking Revenue Recovery Services, Inc. and Bryon Bellerud, II, P.C.,[1] alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*[2] R. 1, Compl. Plaintiffs claim that they are entitled to actual and statutory damages because Defendants violated the FDCPA when attempting to collect an unpaid parking fee. Parking Revenue now moves for summary judgment, arguing

---

[1] A default order was entered against Bellerud on October 24, 2013, after Bellerud failed to answer or otherwise plead. *See* R. 35, Oct. 24, 2013 Minute Entry. In light of this summary-judgment decision in favor of Parking Revenue on the merits, which also applies to Bellerud, no damages can be awarded against Bellerud because there has been no FDCPA violation. Judgment must be entered for Bellerud, along with Parking Revenue.

[2] This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Parking Revenue's Statement of Facts) [R. 75]; "PSOF" (for Plaintiffs' Statement of Additional Facts) [R. 91 at 29-34]; "Pls.' Resp. DSOF" (for Plaintiffs' response to Parking Revenue's Statement of Facts) [R. 91 at 1-28]; and "Def.'s Resp. PSOF" (for Parking Revenue's Response to Plaintiffs' Statement of Additional Facts) [R. 95], followed by the paragraph number.

that the fees that Defendants sought to collect from Plaintiffs did not qualify as "debts" under the FDCPA. R. 76, Def.'s Mot. Summ. J. For the reasons discussed below, Parking Revenue's motion is granted.[3]

## I. Background

In deciding Defendant's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). CPS Chicago Parking, LLC, a wholly-owned subsidiary of Central Parking System, Inc., operated 55 parking lots in Illinois as of the time period between April 5, 2012 and April 26, 2013. DSOF ¶¶ 5-8. Thirteen of these lots were owned by the Chicago Transit Authority (CTA), thirty-four were owned by the Commuter Rail Division of the Regional Transportation Authority (Metra), one was owned by the City of Chicago, and seven were owned by private companies or individuals. *Id.* ¶¶ 15, 17, 19, 21, 29, 42-46. Each lot owner contracted with Central Parking to operate the lots on its behalf. *Id.* Under each contract, Central Parking would pay the lot owner a percentage of the gross revenue collected from the lots. *Id.* ¶¶ 28, 41, 44, 46; *see also* Pls.' Resp. DSOF ¶ 46. Central Parking hired Parking Revenue to provide collection services for parking fees owed to Central Parking. DSOF ¶¶ 10, 12; *see also* Pls.' Resp. DSOF ¶¶ 10, 12.

---

[3]This case was brought as a proposed class action, but both sides appear to be content to have the merits decided before the certify-or-not decision, despite Federal Rule of Evidence 23(c)(1)(A). This is consistent, however, with case law that generally (but not always) permits defendants to ask for a merits decision before a certification decision, if the defendant is willing to forgo the preclusive effect of a potential victory and is willing to litigate case-by-case. *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (citing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941-42 (7th Cir. 1995)).

2

On June 18, 2012, Franklin's silver Toyota Camry with the license plate CARMS10 parked in a lot near the Kensington Metra stop in Chicago, Illinois. DSOF ¶ 48. The Kensington lot was owned by Metra and operated by Central Parking. Pls.' Resp. DSOF ¶ 14; R. 75-12, Matic Dep. Exh. 5.1, Metra Agreement at 1. Franklin believes that she was the person who parked the car that day, although she admits that it is possible her son was driving instead. Pls.' Resp. DSOF ¶ 50. Franklin believes that she paid the $1.50 parking fee on June 18, but she is not certain. *Id.* ¶ 51. On June 22, 2012, Chism parked her Lexus GS 350 with the license plate K724412 at the Kensington lot. *Id.* ¶ 70. She believes that she paid the $1.50 parking fee on that day (though she does not have a receipt). *Id.* ¶ 71. Central Parking claims that neither Franklin nor Chism paid the $1.50 parking fee, and issued violations to both Plaintiffs for $46.50 for "NO PAYMENT IN BOX." DSOF ¶¶ 52, 72; *see also id.* ¶ 27 (identifying the $46.50 amount charged to parking violators in *CTA* lots as the $1.50 parking fee plus an additional $45).

On August 17, 2102, attorney Bryon Bellerud sent both Plaintiffs collection letters on behalf of Parking Revenue. DSOF ¶¶ 60, 73. The letters, which were identical in all material respects, stated that "[a]ccording to the account records of my clients, Central Parking and Parking Revenue Recovery Services, Inc., you have received one or more parking violation notices." R. 1-1, Compl. Exh. 1, Franklin Collection Notice; R. 1-2, Compl. Exh. 2, Chism Collection Notice. The letter expressed "no legal opinion … about this debt," and requested payment within 30 days or notification in writing that the recipient of the letter "dispute[s] the validity

3

of this debt or any portion thereof." Franklin Collection Notice; Chism Collection Notice. The letters contain additional boilerplate language about the rights of the consumer, the possibility of the debt being reported to credit agencies, and the potential for legal action. Franklin Collection Notice; Chism Collection Notice. Franklin and Chism brought this suit against Parking Revenue and Bellerud, alleging that the attempts to collect the $46.50 fee violated the Fair Debt Collection Practices Act. Compl. ¶ 60. Parking Revenue filed a motion for summary judgment, arguing that the $46.50 that it attempted to collect did not qualify as a "debt" within the meaning of the FDCPA. R. 86, Def.'s Am. Br. at 7-10.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no

4

genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Analysis

Congress passed the Fair Debt Collection Practices Act to protect consumers from "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Accordingly, the FDCPA "prohibits a debt collector from using certain enumerated collection methods in its effort to collect a 'debt' from a consumer." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). Plaintiffs allege that Parking Revenue and Bellerud violated the FDCPA by: (1) attempting to collect an amount not expressly authorized by the agreement creating the debt or permitted by law; (2) using false, deceptive, or misleading representations or means in connection with the collection of a debt; and (3) requiring a consumer dispute of a debt to be in writing "to avoid the assumption of validity." Compl. ¶ 60; *see also* 15 U.S.C. §§ 1692f(1), 1692e. Parking Revenue argues that Plaintiffs are not entitled to relief because the parking fees that it attempted to collect are not "debts" and therefore not actionable under the FDCPA. Def.'s Am. Br. at 7-10.

In order for collection efforts to fall under the purview of the FDCPA, the amount that the debt collector seeks to recover must qualify as a "debt." *Bass*, 111 F.3d at 1324. The FDCPA defines a "debt" as "any obligation or alleged obligation of

5

a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The FDCPA does not define "transaction," but the Seventh Circuit has interpreted the term to mean "those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Bass*, 111 F.3d at 1326; *see also Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("[A]t a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or consensual obligation."). Based on this interpretation, courts have held that "fines"—penalties imposed for breaking the law or some other rule—are not the results of consensual transactions and thus cannot be "debts" under the FDCPA. *See Gulley v. Markhoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (*per curiam*) (citing cases and stating that "[w]e agree with these decisions, and … conclude that the municipal fines levied against [plaintiff] cannot reasonably understood as 'debts' arising from consensual consumer transactions for goods and services"); *Durso v. Summer Brook Preserve Homeowners Ass'n*, 641 F. Supp. 2d 1256, 1264-65 (M.D. Fla. 2008) (holding that fines assessed by a homeowners association for violation of subdivision rules did not create a "debt" under the FDCPA); *Omran v. Beach Forest Subdivision Ass'n*, No. 12-10116, 2012 WL 1676688, at *3 (E.D. Mich. May 11, 2012) (holding that fines imposed by a subdivision committee for violation of deed restrictions on the plaintiff's home did not constitute "debts" under the FDCPA).

6

Like monetary obligations incurred through tortious or criminal action, fines do not involve "some form of initial 'business dealing' creating the obligation to pay." *Reibe v. Juergensmeyer and Assocs.*, 979 F. Supp. 1218, 1220-21 (N.D. Ill. 1997) (citing *Bass*, 111 F.3d at 1323; *Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477, 481 (7th Cir. 1997)).

Parking Revenue argues that the $46.50 charged to each Plaintiff for failure to pay the $1.50 parking fee is a fine, much like a parking ticket. Def.'s Am. Br. at 7-10; *see also Graham v. ACS State and Local Solutions, Inc.*, No. 06-2708, 2006 WL 2911780, at *1-2 (D. Minn. Oct. 10, 2006) (holding that unpaid parking tickets are not debts under the FDCPA); *Gulley*, 664 F.3d at 1075 ("agree[ing] with" the *Graham* decision, among others). Because it believes that fees are fines rather than debts, Parking Revenue claims that Plaintiffs are not entitled to relief under the FDCPA. Def.'s Am. Br. at 7-10. Plaintiffs respond that they entered into a consensual business dealing with Central Parking; Central Parking offered a public place to park, and Plaintiffs accepted the offer by agreeing to pay the $1.50 fee. R. 90, Pls.' Resp. Br. at 5. The initial obligation to pay the $1.50 parking fee arose from an agreement to purchase parking services from Central Parking, and the $45 is an unauthorized additional fee for alleged failure to pay—much like a late fee, which can comprise part of a debt. *Id.* at 5-6. They also argue that because Parking Revenue and Bellerud characterized the charges as "debts" in the letters to

Plaintiffs, Parking Revenue should not be able to reclassify those obligations as "fines" to avoid the FDCPA. *Id.* at 6-7.[4]

Because the fees that Parking Revenue attempted to recover from the Plaintiffs are properly categorized as fines, Plaintiffs cannot recover under the FDCPA. The first step in the analysis is that there is no material distinction between the parking lots owned by government entities and those owned by private entities. Although many of the cases construing obligations as fines arose from fees imposed by government entities, *see, e.g., Graham*, 2006 WL 2911780 at *2-3; *Reid v. Am. Traffic Solutions, Inc.*, Nos. 10-cv-204-JPG-DGW, 10-cv-269-JPG, 2010 WL 5289108, at *4-5 (S.D. Ill. Dec. 20, 2010), courts have also identified charges levied by private parties as fines for the purposes of the FDCPA, s*ee Durso*, 641 F. Supp. 2d at 1264-65 (identifying fines imposed by a private homeowners association as outside the scope of the FDCPA); *Gulley*, 664 F.3d at 1075 ("agree[ing] with" *Durso*). Nor does it matter that a third party is operating the lots on behalf of the owner. *See Reid*, 2010 WL 5289108 at *4-5 (holding that red-light tickets issued by a private enforcement agency hired by a municipality were fines rather than debts); *Williams v. RedFlex Traffic Sys., Inc.*, No. 3:06-cv-400, 2008 WL 782540, at *5 (E.D. Tenn. Mar. 20, 2008) (same). The nature of the charged amount is not derived from the identity of the party imposing it, but whether the fee stems from an underlying

---

[4]Plaintiffs also argue that Parking Revenue "admits that their alleged obligation to pay the parking charges at issue arises from a contractual relationship between Plaintiffs and [Central Parking]." Pls.' Resp. Br. at 5 (citing Def.'s Am. Br. at 14). But Parking Revenue's supposed admission came in an argument in the alternative. The statement is therefore not an admission for the purposes of Parking Revenue's primary argument that the charged fees are not "debts" arising from a contract or transaction.

8

consensual transaction creating an obligation to pay. It does not matter who is running the lots (especially when, at the very least, the underlying Metra contract authorizes a fee to be charged). *See* DSOF ¶ 31; Pls.' Resp. DSOF ¶ 31. Thus, to determine whether the parking fees were fines or debts, the Court will evaluate the charges as if the owner of the lot—Metra in this case—had imposed them.

The crucial question, then, is whether the $45 charge is like a late fee imposed on a pre-existing obligation to pay (but a consensually undertaken obligation), or whether it is a separate fine imposed for violation of a rule or law. As far as the undisputed facts in the record show, the fine did *not* arise from a business dealing creating an obligation to pay and therefore cannot be a debt under the FDCPA. To illustrate this conclusion, consider a situation in which someone parks in the parking lot without paying the $1.50 parking fee. This situation does not create a consensual transaction; the parker has not undertaken any obligation to pay or created any contract. He is, in effect, stealing the services of the parking lot. *See Bass*, 111 F.3d at 1326 (holding that theft does not create a consensual transaction); *Yazo v. Law Enforcement Sys., Inc.*, No. CV 08-03512 DDP, 2008 WL 4852965, at *3 (C.D. Cal. Nov. 7, 2008) (holding that use of a toll road without paying is not a consensual transaction). And "although a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Bass*, 111 F.3d at 1326. When the parking lot owner then leaves a "parking violation notice" on that

9

parker's windshield, it is not seeking payment of a contracted-for amount; it is imposing a penalty for violating the rules of the lot requiring payment to park.

The fine assessed in that situation is materially indistinguishable from a ticket issued for failure to feed a parking meter. It is certainly possible for the parker to enter into a voluntary transaction with a municipality. The City is holding out a place to park in exchange for a fee, and the parker enters into a voluntary transaction with the municipality by parking and paying the fee. If the parker does not pay the fee, however, the municipality will issue a citation. This is undoubtedly a fine and thus not a debt under the FDCPA. *See Graham*, 2006 WL 2911780, at *1-2 (holding that unpaid parking tickets are not debts under the FDCPA); *Gulley*, 664 F.3d at 1075 ("agree[ing] with" the *Graham* decision, among others); *Rector v. City and Cnty. of Denver*, 122 P.3d 1010, 1016 (Colo. App. 2005) (holding that unpaid parking meter violations are not debts).

One might object to this analysis by arguing that the non-paying parker is like the shopper who presented a dishonored check, which the Seventh Circuit held, in *Bass*, to be a covered debt. 111 F.3d at 1325. But when a parker fails to pay the initial parking fee, he is acting more like a shoplifter than a shopper who tenders a dishonored check. Yes, a shopper who tenders a dishonored check has entered into a consensual transaction. *See Bass*, 111 F.3d at 1325. The "check evidences the drawer's obligation to pay for the purchases made with the check." *Id.* That is, the shopper has voluntarily engaged in a mutual transaction with the shop owner and promised to pay for a particular good or service. *See Hawthorne*, 140 F.3d at 1372

10

("Unlike torts, however, bounced checks represent legal obligations to pay. In other words, they constitute evidence of a business dealing, or a 'transaction' under the FDCPA.").

By contrast, a shoplifter cannot be said to have engaged in a business dealing with the shop owner merely by entering the store and taking a product. *Bass*, 111 F.3d at 1325. *Hawthorne*, 140 F.3d at 1372 ("Obviously, theft is neither consensual nor contractual; nor does it constitute a business dealing."). The acceptance of goods or services without any corresponding agreement to pay does not create a consensual transaction, just as acceptance of parking services without paying the required fee does not create a consensual transaction. The shopper who tenders a check that will later be dishonored has made a promise to pay for the particular good or service (the check), and the shop owner has consented to this transaction by accepting the promise to pay. No such mutual agreement occurs when the parker fails to pay the fee; acceptance of the service alone is not sufficient evidence of acceptance of an obligation to pay. Metra would no more consent to a parker leaving his car in the lot without paying than a shop owner would to a person leaving the store without paying.[5] Sure, a shoplifter still has an obligation to pay for a particular good or service, but that obligation is *not* the byproduct of a consensual

---

[5]Note that this does not introduce a fraud or bad-faith requirement into the FDCPA. *See Bass*, 111 F.3d at 1329-30 (refusing to create a fraud exception where none exists in the text of the FDCPA). A parker who inadvertently (rather than intentionally) failed to pay the parking fee would still not be entering into a consensual transaction. And the converse is also true, where a consensual transaction remains consensual even if there is ill intent underlying the transaction: a shopper who intentionally passed a bad check would still nonetheless be entering into a consensual transaction. *See Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (holding that the debtor's intent in passing a dishonored check is immaterial under the FDCPA).

transaction. *Bass*, 111 F. 3d at 1326. So too here; Plaintiffs are still required to pay the $1.50 parking fee, but that obligation does not arise from a consensual transaction.[6]

It makes no difference that Plaintiffs claim to have paid the $1.50 parking fee at the parking lot. *See* PSOF ¶¶ 1, 4. Returning to the parking meter example, consider a parker who in fact does feed the parking meter, but nevertheless receives a parking ticket that is mistakenly handed out by an officer. The fact that the parker paid the meter does *not* transform the fine into a debt. The nature of the transaction is the same. The municipality is still penalizing the parker for what is essentially theft of services; the parking enforcement officer was simply mistaken in assessing the fine. This does not mean that the parker cannot challenge the imposition of the fine, just that he may not invoke the FDCPA when the government tries to collect on a parking fine. Thus, regardless of the merits of the dispute over the underlying transaction, the amount charged by Parking Revenue is still a fine.

Nor does it make a difference that attorney Bellerud and Parking Revenue referred to the fines as "debts" in the letters to Plaintiffs.[7] For the purposes of the

---

[6]For this reason, it makes no difference that the $46.50 fine includes the cost of the initial parking obligation. Because the obligation to pay the $1.50 does not arise from a consensual transaction, that obligation is not a debt. The $45 additional charge therefore is not "'incidental' to a claimed debt." *Shula v. Lawent*, 359 F.3d 489, 492-93 (7th Cir. 2004) (noting that, to establish a violation of § 1692f(1), the plaintiff must show that the amount claimed is incidental to an underlying debt); *see also Yazo*, 2008 WL 4852965 at *3 (holding that neither the charge for failure to pay a toll nor the underlying toll price qualified as debts under the FDCPA).

[7]Plaintiffs cite *Shula v. Lawent* for the proposition that Parking Revenue's "repeated description of the parking charges as 'debts' instead of 'fines' in its correspondence is

FDCPA, "debt" is defined by statute. 15 U.S.C. § 1692a(5). That definition does not list the debt collector's characterization of the charge as a factor in determining whether the amount is a "debt" under the Act. *See id*. Nor is there any indication that the use of certain words by a debt collector would change whether a charge fits the statutory definition of a "debt." *Cf. Skelton v. Gen Motors Corp.*, 660 F.2d 311, 316-17 (7th Cir. 1981) ("[I]f a statutory definition of a word is given, that definition must prevail, regardless of what other meaning may be attributable to the word." (internal quotation marks and citation omitted)).

Furthermore, allowing a debt collector's characterization of a charge to transform it into a debt covered by the FDCPA could frustrate the overall purpose of the Act. The FDCPA was enacted to protect debtors from "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). One such protection is the requirement that the collecting party include certain disclosures in communications with the debtor, such as the amount of the debt and the right to dispute the charges. 15 U.S.C. § 1692g(a). Even when a collection attempt is not a collection of a "debt" under the FDCPA's statutory definition, it would be in the debtor's interest to receive FDCPA-like protections. If collection agencies' use of the word "debt" and

---

telling." Pls.' Resp. Br. at 7. It is true that *Shula* stated, in dicta, that a defendant who "himself described the costs in his dunning letter to the plaintiff as a 'debt' … should doubtless be estopped to repudiate that characterization." 359 F.3d at 491. But this statement was an aside that was not essential to *Shula*'s holding. *See id.* Moreover, Plaintiffs do not expressly argue that Parking Revenue should be estopped from claiming that the charges are fines, as the *Shula* dicta suggests, but rather that the record does not support this characterization. *See* Pls.' Br. at 6-7 (Parking Revenue's "argument that the parking charges are 'fines' fails a matter of fact because the record does not support it …. For example, [Parking Revenue's] own collection letter repeatedly describes the charges as a 'debt,' not a 'fine'").

13

the voluntary offering of these protections—even when they were not really dictated by the FDCPA—were enough to trigger the FDCPA's requirements, agencies would be discouraged from voluntarily offering the protections. Allowing the use of word "debt" to transform any request for payment into a debt for the purposes of the Act would put a collection agency in a difficult position, particularly if the collector does not believe that the obligation actually qualifies as a debt under the FDCPA. On the one hand, failure to include the validation notice or disclosures would subject a collection agency to liability under the Act if it turned out that the amount in question was, in fact, a debt. On the other hand, a collection agency would be reluctant to include the validation notice and other disclosures required by the FDCPA—which would necessarily include the term "debt"—for fear that they would become subject to the Act's requirements when they otherwise might not be. The magic-words approach would create a disincentive for collection agencies to act carefully and include consumer-protective disclosures even when they might not be required by law. The FDCPA was intended to protect consumers, in part by preventing misrepresentation of their legal rights. *See* S. Rep. No. 95-382, at 2 (1977). To discourage collection agencies from including information about a consumer's legal rights, even when such disclosures might not be necessary, would not achieve this purpose. The statutory language and purpose of the FDCPA thus make clear that merely labelling an amount as a "debt" will not transform that amount into a "debt" as defined by the FDCPA.

For these same reasons, the decision in *Hansen v. Ticket Track, Inc.*, a case with facts similar to this case, is unpersuasive. 280 F. Supp. 2d 1196 (W.D. Wash. 2003). In *Hansen*, the court evaluated whether a "violation fee" imposed when customers failed to pay a parking fee constituted a "debt" for the purposes of the FDCPA. *Id.* at 1202-03. The collection agency argued that the fees were not debts because they did not arise from transactions; "'transaction' cannot be read to include theft of goods or services." *Id.* at 1202. The court held that "defendant appears to have always treated plaintiffs' obligations as contractual in nature, not tortious." *Id.* at 1203. Noting that all correspondence with the plaintiffs identified that the fees were a debt and that the defendant identified itself as a "debt collection agency," the court concluded that the fee was a debt because the defendants treated it as a debt. *Id.* (distinguishing a case in which an attorney, not a "debt collector," identified the amount requested as an "offer of settlement" for potential tort liability rather than a "debt"). As discussed above, however, the collecting party's identity or characterization of the underlying obligation is not material to the statutory definition of "debt" in the FDCPA. *Hansen*'s reasoning is therefore unpersuasive.

For the foregoing reasons, the $46.50 charge levied against Plaintiffs is properly characterized as a fine. It does not, therefore, meet the statutory definition for "debt" under the FDCPA. Because the FDCPA only applies to debts, Plaintiffs cannot recover under the FDCPA.

## IV. Conclusion

For the reasons stated above, Parking Revenue's motion for summary judgment is granted.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 25, 2014