**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARMEN FRANKLIN and JENIFER CHISM, on behalf of themselves and all others similarly situated, | ) | |
| Plaintiffs, | ) | Honorable Judge Edmond E. Chang |
| v. | ) | |
| PARKING REVENUE RECOVERY SERVICES, INC. and BRYON BELLERUD II, PC | ) | Case No. 13-cv-2578 |
| Defendants. | ) | |

**PLAINTIFFS' AMENDED RENEWED MOTION AND MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

Plaintiffs hereby submit this amended renewed motion to certify their claims under the Fair Debt Collection Practices Act ("FDCPA") for class treatment.[1]

## I. Introduction.

FDCPA claims are routinely certified for class treatment because the FDCPA is a strict liability statute (no need to prove intent or reliance),[2] and, as here, such claims commonly stem from a mass-mailed form letter or other standardized collection practice, thus presenting common questions of fact and law for hundreds of people.[3] This case follows the same paradigm.

---

[1] Plaintiffs' original renewed motion was filed pursuant to *Damasco v. Clearwire Corp.* to prevent a pick-off of the named Plaintiffs. 662 F.3d 891, 896-897 (7th Cir. 2011). (ECF 8, p.1, fn.1).

[2] "As the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990); *see also Turner v. J.V.D.B. & Associates, Inc.*, 330 F. 3d 991, 995 (7th Cir. 2003).

[3] *See e.g., Gammon v. G.C. Services L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995); *Daley v. Provena Hospitals*, 193 F.R.D. 526 (N.D. Ill. 2000); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); *Wells v. McDonough*, 188 F.R.D. 277 (N.D. Ill. 1999); *Clark v. Retrieval Masters Creditors Bureau*, 185

Specifically, Plaintiffs and the class members' claims turn on the text of a form collection that: (a) misrepresents the recipient's right to dispute the debt; and (b) demands payment of an unauthorized charge. The class has 1,799 members, their claims present the same essential facts, *i.e.*, the form letter, and resolving them involves deciding whether the form's text violates the FDCPA. Accordingly, the class easily meet the requirements for class certification. This motion should be granted.

## II. The Facts and Law at Issue, and the Proposed Class.

Central Parking System, Inc. (Central Parking) hired Defendant Parking Revenue Recovery Services (PRRS) to collect parking charges allegedly owed to Central Parking's subsidiary, CPS, a parking lot operator. PRRS and a collection lawyer it hired, Defendant Bryon Bellerud II,[4] sent each Plaintiff a form letter demanding a $1.50 daily parking charge that allegedly was not paid (which Plaintiffs dispute), plus an additional $45 (thus $46.50 total). (*See* Exhibits 1 and 2 (the form letter sent to each Plaintiff), attached).[5] PRRS claims the $45 add-on is a penalty for allegedly failing to pay the $1.50 parking charge. However, Plaintiffs contend the $45 charge

---

F.R.D. 247 (N.D. Ill. 1998); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Randle v. G.C. Servs., L.P.*, 181 F.R.D. 602 (N.D. Ill. 1998); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D. Ill. 1998); *Peters v. AT&T Corp.*, 179 F.R.D. 564 (N.D. Ill. 1998); *Brewer v. Freidman*, 152 F.R.D. 142 (N.D. Ill. 1993); *Kremnitzer v. Cabrera & Rephen, P.C.*, 202 F.R.D. 239 (N.D. Ill. 2001); *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211 (N.D. Ill. 2002); *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306 (N.D. Ill. 2004); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284 (N.D. Ill. 2005); *Hernandez v. Midland Credit Mgmt.*, 236 F.R.D. 406 (N.D. Ill. 2006); *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620 (N.D. Ill. 2007); and *Ramirez v. Palisades Collection*, 250 F.R.D. 366 (N.D. Ill. 2008).

[4] The Court previously granted Plaintiffs' motion for default against Bellerud. (ECF 35). The Court vacated that ruling upon granting summary judgment to PRRS. (ECF 101, p.1, fn.1). The Seventh Circuit reversed the grant of summary judgment, thus eliminating the justification for vacating the default. (ECF 115). Accordingly, the default against Bellerud should be reinstated.

[5] PRRS's discovery responses describe the process for sending the letters. (Exhibit 3 (PRRS Suppl. Resp. to Interrogatories) at pp. 4-5, Resp. to Interrog. 5).

is not authorized by the parking contract between CPS and lot users, or authorized by law.[6] In other words, the add-on is not owed.

In addition to demanding an unowed charge, the form letter states the alleged debt will be assumed valid unless the recipient disputes the alleged debt "in writing." (Exhibits 1 and 2 ("Unless you notify this firm *in writing* within thirty (30) days after receipt of this Notice that you dispute the validity of this debt or any portion thereof, this debt will be assumed to be valid by this Firm.") (italics added, bold omitted)). This statement is incorrect because the FDCPA allows a consumer to dispute the debt by *any* means, *i.e.*, in writing or otherwise, to prevent the debt collector from assuming the debt is valid. *Clark v. Absolute Serv.*, 741 F.3d 487, 490-491 (4th Cir. 2014); *Hooks v. Forman, Holt, Eliades & Ravin*, 717 F.3d 282, 286 (2d Cir. 2013); *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1080-1082 (9th Cir. 2005); *Campbell v. Hall*, 624 F.Supp.2d 991, 1000 (N.D. Ind. 2009) ("the majority of district courts have concluded that §1692g(a)(3) does not impose a writing requirement on a consumer when disputing the validity of a debt.").

The FDCPA's purposes include "eliminat[ing] abusive debt collection practices by debt collectors…" 15 U.S.C. §1692(e). Abusive practices expressly prohibited by the Act include making any false, deceptive or misleading representation in connection with the collection of a debt. 15 U.S.C. §1692e. The Act also specifically prohibits misrepresenting the debt amount, or demanding any charge not expressly provided for by the agreement creating the debt or authorized by law. *See* 15 U.S.C. §1692e(2)(A) and §1692f(1). The determination of whether Defendants' form letter violates the Act is an objective one made by examining the letter through the eyes of the hypothetical "unsophisticated consumer." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996).

[6] No sign announcing a $45 non-payment penalty was posted in the lot Plaintiffs parked in during the relevant period, and Metra did not authorize CPS to charge a $45 penalty. (Exhibit 4 (Plaintiffs' Resp. to PRRS Statement of Facts) at p.12, ¶31-¶32, pp.22-23, ¶64-¶65, and pp.26-27, ¶78).

PRRS admits the form letter at issue was sent to 1,799 Illinois residents during the relevant period, including Plaintiffs. (Exhibit 5 (PRRS Suppl. Resp. to Second Interrogatories) at p.4, Resp. to Interrog. 24). Plaintiffs claim the letter violates the Act, which encourages private enforcement by expressly granting the right to sue for damages, costs and attorney fees for any violation. *See* 15 U.S.C. §1692k(a); *see also Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ("The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA."). Accordingly, Plaintiffs seek to certify the following class:

> (i) all natural persons with Illinois addresses; (ii) who were sent a letter from Bellerud in the form of *Exhibit 1* or *Exhibit 2*; (iii) to recover an amount allegedly owed to Central Parking and Parking Revenue Recovery Services, Inc.; (iv) between April 5, 2012 and April 26 2013.[7]

As explained below, the proposed class meets all of the requirements for class certification under Federal Rule 23(a) and (b)(3). This motion should be granted.

## III. The Class Meets All Class Certification Requirements.

Class certification is a matter for the Court's discretion. *Kleen Prods., LLC v. Int'l Paper Co.*, 831 F.3d 919, 922 (7th Cir. 2016); *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998) (affirming certification of an FDCPA class). The class should be certified if it is ascertainable, meets the four requirements of Rule 23(a), and meets one subsection of Rule 23(b). *See Mullins v. Digital Direct, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) (describing "ascertainability"); and *Kleen Prods.*, 831 F.3d at 922-23 (listing the Rule 23(a) and (b)(3) elements), quoting Fed. R. Civ. P. 23.

[7] Plaintiffs reserve the right to amend the class definition to the extent the Court determines it is necessary to bring the proposed class within the requirements of Rule 23. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (class definition issues "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.").

The proposed class easily passes the ascertainability test because membership is based on clear, objective criteria. *See Mullins*, 795 F.3d at 659-661. As shown above, the class is defined to only include natural persons with Illinois addresses to whom Defendants sent the same form letter Plaintiffs got during a specific date range to collect a debt allegedly owed to Central Parking and PRRS. Indeed, class members have already been identified because, in discovery, PRRS produced copies of the letters it sent them. (Exhibit 5 (PRRS Suppl. Resp. to Second Interrogatories) at p.4, Resp. to Interrog. 24 (referencing documents PRRS23451-26166)).

The four requirements of Rule 23(a) are: (i) the class is so numerous that joinder of all members would be impracticable (numerosity); (ii) the class members' claims present common questions of law or fact (commonality); (iii) Plaintiffs' claims are typical of the class members' claims (typicality); and (iv) Plaintiffs and their counsel are adequate representatives of the class (adequacy). *See* Fed. R. Civ. P. 23(a); *Kleen Prods.*, 831 F.3d at 922-23. The subsection of Rule 23(b) at issue here is (b)(3), which requires: (i) that at least one common question of law or fact "predominate" over any questions that affect only individual class members, and (ii) that a class action is a superior method for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Kleen Prods*, 831 F.3d at 923.

As shown below, the class meets each of foregoing Rule 23 requirements. Accordingly, Plaintiffs are entitled to class certification. *See Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule *entitling* a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.") (brackets and italics added, citations omitted).

**A. The Class Meets the Numerosity Requirement – Rule 23(a)(1).**

The test for numerosity is whether "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no 'magic number' of class members that suffices for numerosity, joinder of forty or more members is generally considered impracticable." *Pierre v. Midland Credit Mgmt.*, 2017 U.S. Dist. LEXIS 61107, *13 (N.D. Ill. Apr. 21, 2017) (citing cases); *accord Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 73 (N.D. Ill. 2016).

The proposed class easily clears this low hurdle. PRRS admits that during the relevant period, the letter at issue was sent to 1,799 natural persons in Illinois. (Exhibit 5 (PRRS Suppl. Resp. to Second Interrogatories) at p.4, Resp. to Interrog. 24). Plainly, it would be impracticable to join 1,799 individuals as party plaintiffs. Accordingly, the numerosity requirement is met. *See, e.g.*, *Bernal*, 318 F.R.D. at 73 (numerosity requirement met where evidence showed defendant sent the form letter at issue to as many as 1,096 persons); and *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969) (151 members sufficient).

**B. The Class Meets the Commonality Requirement – Rule 23(a)(2).**

The test for commonality is whether the class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). This is another "low hurdle." *Morris v. Risk Mgmt. Alternatives*, 203 F.R.D. 336, 343 (N.D. Ill. 2001).

"A common nucleus of operative fact is usually enough to satisfy the commonality requirement or Rule 23(a)(2)." *Keele*, 149 F.3d at 594, quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Alternatively, the commonality requirement is met when the class claims present at least one controlling question whose determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Pierre*, 2017 U.S. Dist. LEXIS 61107, *19, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and citing *Chicago Teachers*

*Unioin v. Bd. of Educ.*, 797 F.3d 426, 434 (7th Cir. 2015) ("a court need only find a single common question of law or fact…").

The proposed class meets the commonality requirement under either test. The class members' claims present a common nucleus of operative fact because each class member's claim arises from the text of the same form letter. *See Keele*, 149 F.3d at 594 ("Common nuclei of fact are typically manifest where, like in the case *sub judice*, the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents.").

The class claims also present one or more controlling questions whose determination will resolve a central issue for each class member's claim. For example, each class member's claim presents the common question of whether the letter's misstatement that the debt must be disputed in writing to avoid it being assumed valid violates 1692e's prohibition against false, deceptive or misleading representations. *Compare*, *e.g.*, *Pierre*, 2017 U.S. Dist. LEXIS 61107, *19 ("The Court must therefore 'resolve a question common to all potential class members – namely, whether Exhibit A violates Section 1692e of the FDCPA.'"), quoting *Quiroz v. Revenue Prod. Mgmt.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008). This question is controlling and central because its favorable resolution entitles Plaintiffs and the class to relief. *Nielsen v. Dickerson*, 307 F.3d 623, 640 (7th Cir. 2002) ("[a] single violation of §1692e is sufficient to establish civil liability under the FDCPA") (citation omitted).[8] Thus, in multiple ways, the commonality requirement is met.

---

[8] The common questions also include whether the form letter misrepresents the amount of the debt in violation of §1692e(2)(A), and demands payment of an amount that is neither expressly provided by the agreement creating the debt or permitted by law in violation of §1692f(1), *i.e.*, by demanding payment of an additional sum beyond the daily parking charge. PRRS claims there were signs posted in the lots stating a penalty would be imposed, but there were no such signs in Plaintiffs' lot, and PRRS produced no competent evidence of any such signs during the relevant period. (*See, e.g.*, Exhibit 4 (Plaintiffs' Resp. to PRRS Statement of Facts) at p.13, ¶34-¶36).

**C. Plaintiffs' Claims Are Typical of the Class's Claims – Rule 23(a)(3).**

"Whether [Plaintiffs'] claims are typical of those of the class members [they] represent[] is closely related to the commonality inquiry." *Keele*, 149 F.3d at 595, citing *Rosario*, 963 F.2d at 1018. Plaintiffs' claims are "typical" of the class members' claims if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *Id.* at 595, quoting *De La Fuente v. Stokley Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

That is the case here because Plaintiffs' and the proposed class members' claims were subjected to identical conduct, and present identical legal theories. Plaintiffs and the class members were subjected to identical conduct because they were sent the same form collection letter demanding payment of a charge, and stating the debt would be assumed valid if not disputed in writing. Likewise, Plaintiffs and the class share the same legal theories because their claims arise under the same provisions of the FDCPA. Faced with materially similar facts, the Seventh Circuit ruled the typicality requirement met:

> By mailing the form letters seeking the $12.50 collection fee, the [defendants] engaged in the same course of conduct towards [plaintiff] and the members of classes A and B. These individuals are now suing the [defendants] under the FDCPA and CFDCPA, alleging violations of the same statutory sections under the same legal theory. We are confident that [plaintiff] has met Rule 23's typicality requirement.

*Keele*, 149 F.3d at 595. For these same reasons, Plaintiffs also meet the typicality element.

**D. Plaintiffs and Counsel Are Adequate Representatives – Rule 23(a)(4).**

Rule 23(a)(4) requires Plaintiffs and their counsel to be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is a three-part test:

> First, the representative(s) of the class cannot have interests contrary to those of the rest of the class. *See, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-29, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (holding that class representatives must be

> part of the class, possess the same interest, and have suffered the same injury); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). Second, to ensure vigorous advocacy, the class representative(s) must be sufficiently interested in the case outcome. *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986); *see also, Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991) (noting that the representative need "only possess general knowledge of the case and participate in discovery"). Third, class counsel must be qualified, experienced, and generally able to conduct the case. *See, Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977).

*Pierre*, 2017 U.S. Dist. LEXIS 61107 at *22.

All of these criteria are met. First, Plaintiffs have no interests contrary to the class members' interests because Plaintiffs and the class both seek to establish that the form letter they were all sent violates the FDCPA. *See Pierre*, 2017 U.S. Dist. LEXIS 61107 at *23; *see also Hale v. AFNI, Inc.*, 264 F.R.D. 402, 406 (N.D. Ill. 2009) ("the named plaintiff's interests coincide with the general interests of the class members…").

Second, Plaintiffs are sufficiently interested in the outcome of the case because, if they succeed in proving Defendants' form letter violates the FDCPA, they stand to recover damages. *See* 15 U.S.C. 1692k(a); *see also Pierre*, 2017 U.S. Dist. LEXIS 61107 at *23 ("Pierre has a clear stake in a successful outcome — she seeks damages for herself and the class..."); *see also Hale*, 264 F.R.D. at 406 ("both Hale and the class members seek money damages for AFNI's alleged violated of the FDCPA.").

Third, Plaintiffs' attorneys (Messrs. Keogh and Hilicki) are qualified, experienced and able to conduct the case. They have decades of class action experience, including in FDCPA cases. (<u>Exhibit 6</u> (Decl. of Keith Keogh) at ¶2-¶10, ¶19-¶20; *see also Tripp v. Berman & Rabin, P.A.*, 2017 U.S. Dist. LEXIS 80015, *13 (D. Kan. May 25, 2017) (FDCPA case noting that "[b]ased on its exposure to Mr. Hilicki in this case … the court perceives [him] as [an] able, sophisticated, and experienced consumer lawyer[] with meaningful class action experience."); *compare Pierre*, 2017

U.S. Dist. LEXIS 61107 at *24 (counsel found adequate because he "is an active and experienced practitioner in consumer class action cases, and has been appointed class counsel in multiple cases in the Northern District of Illinois.'"). In short, the adequacy requirement is met.

**E. The Class Meets the Requirements of Rule 23(b)(3).**

Once the Rule 23(a) elements are met, the class need only meet one subsection of Rule 23(b). *See Heckert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008). The applicable subsection here is (b)(3), which provides that class certification is appropriate when "the questions of law ***or*** fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Kleen Prods.*, 831 F.3d at 923, *quoting* Fed. R. Civ. P. 23(b)(3) (emphasis added). As shown below, this case easily meets both requirements.

**1. Common Question of Law or Fact Predominate.**

"Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (citation and brackets omitted).[9] Here, the issue of whether Defendants' letter violates §1692e of the FDCPA by misstating that any dispute of the debt must be "in writing" is a significant aspect of the case because its resolution establishes liability for the entire class. *See Nielsen*, 307 F.3d at 640 ("[a] single violation of § 1692e is sufficient to establish

[9] Note, Rule 23(b)(3) only requires that common issues "predominate" over individual issues, not the "absence" of individual issues. *McMahon v. LVNV Funding, LLC*, 807 F.3d 872, 875 (7th Cir. 2015) (reversing the denial of class certification in an FDCPA case, noting "we have explained that 'the need for individual proof alone does not necessarily preclude class certification.'") (citations omitted); *see also Bell v. PNC Bank N.A.*, 800 F.3d 360, 381 (7th Cir. 2015) ("our cases demonstrate that commonality as to every issue is not required for class certification."). In fact, class certification will not be defeated even if there is some possibility that "separate proceedings of some character will be required to determine the entitlements of the individual class members to relief." *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

civil liability under the FDCPA") (citation omitted). Moreover, this question can easily be resolved for all class members "in a single adjudication" because, to decide it, the Court need only compare the letter's text to the law. *See, e.g.*, *Clark*, 741 F.3d at 490-491; *Hooks*, 717 F.3d at 285-286; *Camacho*, 430 F.3d at 1079-1082.[10] Indeed, "courts in this Circuit routinely find Rule 23(b)(3) satisfied where the common issue is 'whether the debt collection letters that Defendant sent to [Plaintiff] and the class members violate the FDCPA.'" *Pierre*, 2017 U.S. Dist. LEXIS 61107, *16, quoting *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007), and citing, *inter alia*, *Magee v. Portfolio Recovery Assocs., LLC*, 2015 WL 535859, *3-4 (N.D. Ill. Feb. 5, 2015).

By contrast, this case does not raise any significant individual issues among class members, let alone any so material and cumbersome that they could predominate over the common questions. Thus, as is typical in FDCPA cases, this case easily meets the predominance requirement.

**2. A Class Action Is a Superior Method of Resolving This Matter.**

"[T]he FDCPA specifically permits class actions, see 15 U.S.C. § 1692k, and a class action is well-suited to the FDCPA context." *Morris*, 203 F.R.D. at 345, citing *Crawford v. Equifax Payment Servs, Inc.*, 201 F.3d 877, 880 (7th Cir. 2000). This case is no different.

First, a class action will promote efficiency and judicial economy. Resolving the common questions this case presents in one lawsuit consumes far fewer judicial resources than requiring potentially 1,799 individual lawsuits to repeatedly decide whether Defendants' form letter violates the FDCPA. *See Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347, 358 (N.D. Ill. 1998) ("The

[10] Resolving the common question of whether Defendants' form letter demands a charge that neither expressly provided for by the agreement creating the debt or authorized by law in violation of §1692e(2) and §1692f(1) also decides an issue of liability for the entire class, and it too can be resolved in a single adjudication because Defendants presented common evidence on the point. (*See, e.g.*, ECF 75 (PRRS's Summary Judgment Statement of Facts), citing Matic Dep. at *passim*).

common issues of law and fact in this case will be more efficiently resolved in a class action."); *see also Wilson v. Collecto, Inc.*, 2004 U.S. Dist. LEXIS 3074, *17 (N.D. Ill. Feb. 24, 2004) ("the issue in this case -- whether or not a form letter violated the FDCPA -- is particularly well-suited for adjudication under Rule 23."). Indeed, "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Tatz v. Nanophase Techs. Corp.*, 2003 U.S. Dist. LEXIS 9982, *27-*28 (N.D. Ill. June 12, 2003), quoting *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).

Second, a class action promotes justice and fairness. It ensures class members who are unaware that they have a claim, or who lack the ability or wherewithal to bring their own lawsuit, will be able to vindicate their rights. *See, e.g., Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (considering the "…inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."); *Mace v. Van Ru*, 109 F.3d 338, 344 (7th Cir. 1997) (individuals may not "be aware of [their] rights, [or] willing to subject herself to all the burdens of suing and able to find an attorney willing to take [their] case. These are considerations that cannot be dismissed lightly…"). In fact, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* However, in the unlikely event that "a few class members' injuries prove to be substantial, they may opt out and litigate independently." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

By contrast, there is no legitimate benefit to denying class certification and forcing *all* of the 1,799 class members to either file their own individual lawsuits or forgo their rights altogether. Indeed, this would deter many class members from enforcing their rights because recoverable

statutory damages are only "up to" $1,000 (15 U.S.C. §1692k(a)(2)), which may not provide a sufficient incentive to locate counsel, conduct discovery and endure "all the burdens of suing." *See Mace*, 109 F.3d at 344; *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small.") (citation omitted). Accordingly, a class action is plainly superior to requiring the entire class to file individual lawsuits. The class should be certified.

**IV. Conclusion**

FDCPA cases are generally well-suited for class action treatment, and this case is no exception. A certified class action will resolve nearly 1,800 common claims based on a form letter in one efficient case. The class easily meets the requirements of Federal Rule 23. Accordingly, Plaintiffs, individually and on behalf of the proposed class, respectfully request that the Court certify the proposed class, appoint Plaintiffs' attorneys as class counsel, and grant and such other relief that the Court deems just.

Respectfully submitted,

*s/Michael S. Hilicki*
Keith J. Keogh
Michael Hilicki
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, IL 60603
312.726.1092
keith@KeoghLaw.com
mhilicki@KeoghLaw.com